UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHILLIP B.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-00972-MJD-SEB ) |
| ANDREW M. SAUL, | ) ) ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Phillip B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §423(d).

**I. Background**

On January 23, 2014, Claimant applied for DIB, alleging the onset of disability as of June 1, 2006. [Dkt. 8-5 at 2.] Claimant's date last insured was September 30, 2012. Claimant's application was initially denied on February 12, 2014, and again upon reconsideration on May 28, 2014. [Dkt. 8-4 at 11.] Administrative Law Judge Albert J. Velazquez ("ALJ") held a hearing on Claimant's application in October, 2015. [Dkt. 8-2 at 33.] On November 25, 2015,

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

the ALJ issued his determination that Claimant was not disabled. [*Id*. at 20.] The Appeals Council then denied Claimant's request for review on January 13, 2017. [Dkt. 8-25 at 18.] Claimant timely filed a complaint with the United States District Court for the Southern District of Indiana on February 27, 2017. [Dkt. 8-25 at 28.] Pursuant to an agreed motion, the court entered judgment in favor of Claimant on November 3, 2017, and directed the Commissioner on remand to redetermine Claimant's RFC and to reconsider Claimant's limitations in concentration, persistence, or pace. [Dkt 8-25 at 34.] On October 24, 2018, the ALJ held a second hearing, [Dkt. 8-23 at 36], and again denied Claimant's application on January 2, 2019. [Dkt. 8-23 at 15.] The Appeals Council failed to timely act upon Claimant's request for review, making the ALJ's decision the final decision of the Commissioner. Claimant then timely filed his complaint in this Court seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at

2

step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520 (2012). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and this Court must uphold them "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, but may determine only whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that there was substantial evidence supporting the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)) (internal quotation marks omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochsaka v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). While the ALJ must base his decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th

3

Cir. 1994), and must "provide some glimpse into [his] reasoning" to "build an accurate and logical bridge from the evidence to [his] conclusion," he need not "address every piece of evidence or testimony." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of June 1, 2006, through his last insured date of September 30, 2012. [Dkt. 8-23 at 7.] At step two, the ALJ determined that Claimant had the following severe impairments: degenerative disc disease, obstructive sleep apnea, depressive disorder, post-traumatic stress disorder, and history of drug and alcohol abuse. [*Id*. at 8.] At step three, however, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." [*Id*.] In making this determination, the ALJ considered Listings 1.04 (Disorders of the Spine), 12.04 (Depressive, bipolar and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders). [*Id*.]

The ALJ then analyzed Claimant's RFC and concluded that he had the RFC through the date last insured to perform light work, except:

> [Claimant] could lift and/or carry 20 pounds occasionally and 10 pounds frequently; standing and/or walking for two (2) hours; and sitting for six (6) hours in an 8- hour workday. The claimant is capable of occasionally balancing, stooping, kneeling, crouching and climbing ramps and stairs; but cannot climb ladders, ropes or scaffolds and cannot crawl. The claimant's work must allow him to alternate to a sitting or standing position for 1-2 minutes each hour at the option of the claimant and have the use of a cane for ambulation to and from the workstation. The claimant had to avoid work at unprotected heights; work around dangerous moving machinery, open flames or large bodies or water; and no work requiring the operation of a motor vehicle. The claimant's work [sic] able to be learned in 30 days or less or by demonstration, i.e., limited to simple and repetitive tasks. Finally, the claimant's work should require no more than occasional interaction with the public, coworkers or supervisors.

[*Id*. at 9.] In determining the RFC, the ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id*. at 10.]

At step four, the ALJ found that Claimant had no past relevant work. [*Id*. at 13.] The ALJ proceeded to step five, considering testimony from a vocational expert ("VE"), who indicated that an individual with Claimant's age, education, work experience, and RFC would be able to perform several jobs that exist in significant numbers in the national economy, such as final assembler, document preparer, and weight tester. [*Id*. at 14.] Based on these findings, the ALJ concluded that Claimant was not disabled. [*Id.* at 15.]

## IV. Discussion

The central issue in this case is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant advances two arguments for reversing the ALJ's decision: (1) the ALJ erred by failing to account for his own findings of moderate limitations in concentration, persistence, or maintaining pace in his RFC determination and in the hypothetical question he posed to the VE; and (2) the ALJ erred by failing to adequately consider whether Claimant's mental impairments met or equaled Listing 12.15. These arguments are addressed, in turn, below.

### A. Limitations in Concentration, Persistence, or Pace

Claimant contends that the ALJ did not appropriately address his limitations in maintaining concentration, persistence, or pace in both the ALJ's RFC determination and in the hypothetical question he posed to the VE. [Dkt. 11 at 31.] Specifically, Claimant asserts that the

ALJ's RFC determination is "even more deficient than the simple, repetitive work limitation in *Vargas*." [Dkt. 11 at 32.] In response, the Commissioner argues that, unlike *Vargas*, the ALJ's RFC determination does take into account all of Claimant's mental limitations, because the ALJ determined that Claimant could perform "a range of light work" subject to the additional limitations, including his limited capacity for work that could be learned within 30 days (i.e., simple and routine tasks) and work that provided only some occasional interaction with the public, coworkers, and supervisors. [Dkt. 12 at 14.]

In step three, with regard to concentration, persistence, or maintaining pace, the ALJ found:

> [T]he claimant has moderate limitation. As stated above, the claimant graduated from high school. However, [the ALJ] noted no particular evaluation that suggested the claimant had more than moderate difficulties with concentration.

[Dkt. 8-23 at 9.] The ALJ then analyzed Claimant's mental impairments in the RFC determination by limiting Claimant to a range of light work that could be "learned in 30 days or less by demonstration, i.e., limited to simple and repetitive tasks," and limiting Claimant to work that required "no more than occasional interaction with the public, coworkers or supervisors." [*Id.*] The ALJ's hypothetical question to the VE was consistent with this RFC:

> Let's assume a person of the Claimant's age, education and work experience. Is able to lift and carry 20 pounds occasionally, ten pounds frequently. Can stand and/or walk for two of eight hours and sit for six of eight hours in an eight-hour workday. The individual should never climb ladders, ropes or scaffolds. Could occasionally climb ramps and stairs. Can occasionally balance, stoop, kneel and crouch but never crawl. The individual can alternate to a sitting or standing position for one or two minutes each hour at the hypothetical person's option. The individual is able to use a cane to and from the workstation. And the individual should avoid work at unprotected heights, working around dangerous moving machinery or open flames or large bodies of water, and the work should not require the operation of a motor vehicle. The work should be such that it can be learned in 30 days or less or by demonstration. And the work should require no more than occasional interaction with the public, coworkers or supervisors. Given that residual functional capacity assessment, is there any work such a person could do?

[Dkt. 8-23 at 84-85.] The VE testified that Claimant could perform work as a final assembler, document preparer, or weight tester. [*Id*. at 85]

Claimant correctly notes that the Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" [Dkt. 11 at 32.] (internal quotations marks omitted). *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Vargas v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *See, e.g., Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to [the ALJ's] RFC finding, [the court] [has] likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace.")(quoting *Winsted v. Berryhill*, 923 F.3d 477 (7th Cir. 2019)) (internal quotation marks omitted).

In *Vargas,* the Seventh Circuit reversed the District Court's decision affirming an ALJ's decision because the ALJ did not address the claimant's moderate difficulties in regard to concentration, persistence, or pace in the hypothetical question posed to the VE. 794 F.3d at 814. There, at steps two and three, the ALJ determined that the claimant had "moderate difficulties" with regard to concentration, persistence, or pace. *Id.* However, in the RFC determination, the ALJ concluded that the claimant could perform "light work" and was limited to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions." *Id.* at 812-13. The court noted that the "hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace."

7

*Id.* at 814 (emphasis in original). Further, the court stated that limiting a claimant to "simple, routine, and repetitive tasks" is "unrelated" to the question of whether a claimant with difficulties maintaining concentration, persistence, or pace can perform such work. *Id.* at 816. Therefore, the ALJ committed reversible error. *Id.* at 814.

Here, as in *Vargas*, by limiting Claimant to simple and repetitive tasks in the RFC, the ALJ relied on boilerplate language and failed to provide an "accurate and logical bridge" between his recitation of medical evidence and the decision to account for all of Claimant's difficulties in maintaining concentration, persistence, or pace. Therefore, on remand, the ALJ must articulate the effects of Claimant's moderate limitations in maintaining concentration, persistence, or pace on Claimant's RFC and fully account for those limitations in the RFC assessment and in any hypothetical questions posed to the VE.

B. Listing 12.15

Claimant argues that the ALJ erred by ignoring relevant medical evidence and testimony that supported a finding that Claimant satisfied Listing 12.15. [Dkt. 11 at 25.]

In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of it. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). For example, in *Minnick v. Colvin,* 775 F.3d 929, 935-36 (7th Cir. 2015), the Seventh Circuit found the ALJ's perfunctory analysis to warrant remand when coupled with significant record evidence that arguably supported the listing. *See Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012) (remand required where the ALJ's cursory listing analysis failed to articulate a rationale for denying benefits when the record supported finding in the claimant's favor).

To meet Listing 12.15 "trauma-and stressor-related disorders," a claimant's impairments must satisfy the "paragraph A" criteria, as well as satisfy either "paragraph B" or "paragraph C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15. In evaluating mental disorders, the "paragraph B" of each of the listings "represent[s] the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). A claimant can satisfy the "paragraph B" criteria by showing "[e]xtreme limitation of one, or marked limitation of two," of the following abilities:

1. Understanding, remembering, or applying information.

2. Interacting with others.

3. Concentrating, persisting, or maintaining pace.

4. Adapting or managing oneself.

*See id.* §§ 12.04(B), 12.06(B), 12.08(B), 12.15(B) (citations omitted). "Marked" restrictions or difficulties are serious limitations of the ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area, representing a four on a five-point scale, with one being no limitation and five being "extreme limitation" (essentially not functioning at all) in a given area. *Id*. § 12.00(F)(2). The "paragraph C" criteria are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [a claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1) (internal quotation marks omitted). A mental disorder meets the paragraph C criteria if there is:

> [A] medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 
> > 1. Medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and

9

> 2. Marginal adjustment, that is . . . minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

*See id*. §§ 12.04(C), 12.06(C), 12.15(C) (citations and emphasis omitted).

Claimant asserts that the ALJ failed to "mention, let alone provide even a perfunctory analysis of Listing 12.15." [Dkt. 11 at 26.] In response, the Commissioner argues that even though the ALJ failed to mention Listing 12.15 by name, he nonetheless gave ample consideration to the issues relevant to that Listing. Even though ALJ should name and address each relevant Listing, "failure to explicitly refer to the relevant listing" does not necessitate reversal. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). Although the ALJ did not specifically name or analyze Listing 12.15, the paragraph B and paragraph C criteria of Listing 12.15 are the same as the paragraph B and paragraph C criteria of the listings he did specifically analyze: Listings 12.04 ("depressive, bipolar, and related disorders") and 12.06 ("anxiety and obsessive-compulsive disorders"). In determining whether Claimant satisfied Listings 12.04 and 12.06, the ALJ considered the paragraph B criteria and whether Claimant suffered from a marked limitation, finding:

> In <u>understanding, remembering, or applying information</u>, the claimant has moderate limitation. The claimant graduated from high school. Simply put, there is no relevant evidence to suggest he has any significant cognitive or memory deficits. Cleary [sic], one might infer that during the occasions the claimant is intoxicated he is likely cognitively impaired, however, this is not clear from the medical evidence. Nor, can the claimant rely upon his impairment due to drugs or alcohol, as a "material" factor is his disability.
>
> In <u>interacting with others</u>, the claimant has moderate limitation. The claimant is married and lives with his wife. The claimant alleges social anxiety and review of the available psychological evaluation through the Veterans Administration (VA) reveals the claimant to be resentful, bitter and perceives he is being "disrespected" if disagreed with.
>
> With regard to <u>concentrating, persisting, or maintaining pace</u>, the claimant has moderate limitation. As stated above, the claimant graduated from high school.

> However, I noted no particular evaluation that suggested the claimant had more than moderate difficulties with concentration.
>
> As for <u>adapting or managing oneself</u>, the claimant has mild limitation. The claimant has essentially normal adaptive functioning. He is capable of normal daily functioning, i.e. grooming, dressing, cooking, cleaning, driving, shopping, etc.

[Dkt. 8-23 at 8.] The ALJ concluded that because Claimant's "mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied." [*Id*. at 9.] (internal quotation marks omitted). When evaluating the paragraph C criteria, the ALJ concluded:

> [T]hat the evidence fails to establish the presence of the "paragraph C" criteria as it does not demonstrate a "serious and persistent" mental disorder with evidence of treatment including psychosocial supports, highly structured setting to diminish symptoms and a minimal capacity to adapt to changes in environment or demands not already incorporated into daily life.

[*Id*.] (internal quotation marks omitted). Accordingly, the Court notes that, while the ALJ failed to explicitly mention Listing 12.15, the ALJ's above analysis would have dictated a similar finding that Claimant's impairments neither met nor equaled that Listing, since the ALJ concluded that Claimant's limitations satisfied neither the paragraph B nor the paragraph C criteria, which are equally applicable to Listing 12.15.

Claimant further asserts that the ALJ failed to build a logical and accurate bridge between the record evidence and his conclusion that Claimant did not meet or equal Listing 12.15. [Dkt. 11 at 28.] In response, the Commissioner asserts that Claimant bears the burden of establishing that he met or equaled a listing, and that Claimant could not meet this burden because no medical evidence indicated that Claimant met or equaled Listing 12.15 by the date last insured.[2] [Dkt. 12 at 10.] In reply, Claimant contends that the ALJ erred by failing to logically infer that Claimant

---

[2] September 30, 2012 is the Claimant's date last insured for Disability Insurance Benefits under Title II. [Dkt. 8-2 at 22.]

11

met or equaled Listing 12.15 from the medical evidence created after Claimant's date last insured—namely, the evidence summarized in the Veteran's Affairs ("VA") findings and VA psychologist Laura Wager's report[3]. [Dkt. 15 at 3.]

As noted above, the ALJ found at the step three disability determination that Claimant had severe impairments consisting of degenerative disc disease, obstructive sleep apnea, depressive disorder, post-traumatic stress disorder, and a history of drug and alcohol abuse. [Dkt. 8-23 at 8.] The ALJ evaluated Claimant's mental impairments under Listings 12.04 and 12.06, and at step five, the ALJ's findings were as follows:

> medical expert, Dr. Griffin, Ph.D., also noted that there is scant evidence to support the notion the claimant's [sic] was of a disabling level during the relevant time under review. The claimant's theory of disability appears to stem from intense situations occurring while serving in the Gulf War resulting in symptoms of PTSD, resentment and "being disrespected." When Dr. Griffin noted there simply was no mental health treatment evidence prior to 2013 and 2014 claimant's counsel countered (somewhat condescendingly) "is it normal for someone to suddenly manifest the symptoms of PTSD at age 43?" Of course, Dr. Griffin testified no, but maintained he cannot assess evidence that does not exist. Furthermore, while I note that the claimant likely did develop symptoms of PTSD much sooner, I do not have the ability to conjure evidence of a disabling level of severity from whole cloth. Moreover, within the mental health treatment evidence the claimant freely admits he was drinking heavily and using other illegal drugs after his discharge from the Navy. Yet I note the opinion he most relies upon from Dr. Smith-Gamble, M.D., dated September 10, 2013 makes absolutely no mention of the claimant's substance abuse as a possible exacerbating factor in his mental symptoms.

[Dkt. 8-23 at 12.]

The third step in determining whether a listing is met or equaled is an "ultimate legal question" for the ALJ. S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670

---

[3] Claimant asserts that the ALJ failed to adequately address the opinion of Dr. Laura Wager (whom Claimant incorrectly referred to as Dr. Wagner), the VA examining psychologist, who "examined [Claimant] on July 2, 2012, for a compensation and pension evaluation." [Dkt. 11 at 4.] The Court notes that Dr. Wager's initial psychological evaluation actually was on July 2, **2013**, after Claimant's last insured date.

(7th Cir. 2004). Social Security Ruling 18-1p[4], provides that "the decision to call on the services of a [Medical Expert] is always at the ALJ's discretion." *See* S.S.R. 18-1p.

Although the Court must give deference to the ALJ's factual determination underlying his listing assessment, the ALJ must consider all of the evidence, particularly the evidence contrary to the determination. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify record evidence that was misstated or ignored, and which could support a finding that claimant met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002). The Seventh Circuit has stated that post-date last insured evidence may be probative of the claimant's condition within the relevant period. *See Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (rejecting government's argument that ALJ could not consider evidence after the date last insured); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of claimant's condition during that period."). Thus, in *Barnett*, the Seventh Circuit noted that even though the record did "not establish an average of one seizure per week over the entire course of the treatment," it did "establish an upward trend in the frequency and severity of Barnett's seizures," and thus the ALJ was wrong to disregard the substantial evidence that demonstrated Barnett's impairments met or equaled the listing. *Barnett*, 381 F.3d at 669.

In this case, as in *Barnett*, the ALJ overlooked pertinent evidence and testimony demonstrating the ongoing and increased severity level of Claimant's symptoms of PTSD before

---

[4] In October of 2018, S.S.R. 83-20 was rescinded and replaced with S.S.R. 18-1p, which recognizes that the date of onset is the date an applicant meets both the non-medical and the medical requirements of disability.

13

the date last insured. *See* [Dkt. 8-9 at 43] (noting that Claimant underwent six sessions of group therapy to address his symptoms of PTSD from August 2012 through October 2012); [Dkt. 8-8 at 3-4] (letter by Dr. Valerie Smith-Gamble, Director of VA's Older Adult Mental Health Clinic discussing Claimant's severe PTSD symptoms since his military service[5] in the early 1990's); [Dkt. 8-9 at 28.] (Initial PTSD Screening Questionnaire reporting Claimant's PTSD GAF score of 61); [Dkt. 8-9 at 48.][6] (Dr. Wager reporting that Claimant's PTSD during Desert Shield and Desert Storm contributed to Claimant's diagnosis of PTSD); [Dkt. 8-20 at 35] (Dr. Morales reporting in his June 2015 Progress Notes that since Claimant was discharged from the Navy in 1991, his experiences of "panic attacks, anxiety, depression, nightmares, and fear of SI/HI" have only "progressively worsen[ed]"). Claimant also reported that, since at least 2006, he had experienced nightmares and a host of other stress-related symptoms, including depression, anxiety, distorted perception, sleep disorder, and homicidal ideation. [Dkt. 8-9 at 42.] Claimant testified that after he returned from military service, he suffered from PTSD symptoms including "nightmares [and] flashbacks" and that such symptoms caused him to feel weak, dizzy, and nervous. [Dkt. 8-23 at 40.] Claimant further reported that "seeing [the] body of [his] stepson

---

[5] Claimant completed military service from July 27, 1987 through July 26, 1991. [Dkt. 8-5 at 2.]
[6] Commissioner argues that Claimant's reliance on Dr. Wager's report does not support a conclusion regarding Claimant's symptoms of PTSD before the date last insured, because Dr. Wager acknowledged that in "June 2006, around the time of [Claimant's] alleged onset of disability, [Claimant] showed no signs of a mental impairment, with a zero rating on [Claimant's] depression screen and no complaints from [Claimant] that he had any mental health symptoms." [Dkt. 12 at 12.] However, the Court notes that in July 2013, Dr. Wager opined that Claimant had a combination of depression, PTSD, personality disorder, and substance abuse, which caused Claimant to suffer from an "occupational and social impairment with reduced reliability and productivity." [Dkt. 8-9 at 29.] Dr. Wager reported that Claimant's combat stressors and the murders of his stepson and a friend contributed to Claimant's PTSD. [Dkt. 8-9 at 49] Dr. Wager further reported that Claimant had limited insight about aspects of his personality that greatly influenced his functioning and that Claimant's personality disorder with narcissistic and paranoid traits manifested itself at a young age, prior to his military deployment to Saudi Arabia and Kuwait. [Dkt. 8-9 at 53.]

14

lying in the street" triggered memories of combat in the Gulf War. [Dkt. 8-9 at 43.] Not only does Claimant's initial brief identify the specific listing the ALJ should have considered, Claimant points to the medical record and his own testimony as evidence that his symptoms of PTSD met or equaled Listing 12.15 before the date last insured. The ALJ's failure to give consideration to this medical evidence and testimony after the date last insured was an error of law, and warrants remand.

V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated: 17 DEC 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.